IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ERIC GARNER, individually and on behalf of all others similarly situated　§§§§<br><br>*Plaintiff*,　§<br>v.　§<br>　§§<br>POSTAL FLEET SERVICES, INC.,　§<br>VILANO EMPLOYMENT SERVICES,　§<br>INC., AND THE STAGELINE　§<br>COMPANY　§<br>　§§<br>*Defendants.*　§§§ | CIVIL ACTION NO.: _____<br><br><br><br><br><br>JURY DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ERIC GARNER ("Plaintiff"), and files his, Original Complaint, against Postal Fleet Services, Inc., Vilano Employment Services, Inc., and The Stageline Company ("Defendants"), to recover damages and causes of action would show the following:

**I.    NATURE OF CLAIMS**

1. This action is filed under 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended (42 §2000e *et seq*.)("Title VII") for race discrimination and retaliation for engaging in protected activity, to seek relief and correct unlawful employment practices by Defendants, for race discrimination and retaliation.

2. Plaintiff seeks equitable relief, back and future pay, lost benefits, reinstatement, liquidated, compensatory and punitive damages, and any and all other damages allowed for violations of Section 1981 and Title VII.

3. Plaintiff demands a jury on all issues triable to a jury.

## II.    JURISDICTION AND VENUE

4. This action arises under federal law as hereinafter more fully appears. Therefore, this Court has jurisdiction over Plaintiff's claims in this matter pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and it is the district in which the Defendants' business is located and operated and because Defendants have substantial contacts within this district.

6. Plaintiff has exhausted all required administrative remedies. Plaintiff was issued a right to sue letter on November 30, 2020, by the U.S. Equal Employment Opportunity Commission, in cause number 450-2019-05887, and has brought this action within the 90 days allowed by law.

## III.    THE PARTIES

7. Plaintiff, Eric Garner, is an individual residing in the state of Texas. Plaintiff is an employee of Defendants.

8. Defendant, Postal Fleet Services, Inc. ("Defendant Postal") is a company primarily engaged in transportation services for the United States Postal Service ("USPS"). Among other states, Defendant Postal transacts business and provides services in the state of Texas and may be served with process through its registered agent, Leslie Don Dorris at 2808 5th Street N, Suite 501, Saint Augustine, FL 32084.

9. Defendant, Vilano Employment Services, Inc. ("Defendant Vilano") is a company primarily engaged in transportation services for the United States Postal Service ("USPS"). Among other states, Defendant Vilano transacts business and provides services in the state of Texas and may be served with process through its registered agent, Craig R. Gregory at 2808 5th Street N, Suite 501, Saint Augustine, FL 32084.

10. Defendant, The Stageline Company ("Defendant Stageline") is a company primarily engaged in transportation services for the United States Postal Service ("USPS"). Among other states, Defendant Vilano transacts business and provides services in the state of Texas and may be served with process through its registered agent, Leslie Don Dorris at 2808 5th Street N, Suite 501, Saint Augustine, FL 32084.

## IV.   FACTS

11. In June of 2018, Plaintiff began his career with Defendants as a driver. Plaintiff (African American) remained in that role until November of 2018, when he was terminated for being inactive for more than six weeks, then he was subsequently rehired in February of 2019. Plaintiff is currently employed by Defendants.

12. Plaintiff has four managers: Eric Mason, Mike Porter, Valerie West and Josh Turner ("Management").

13. Management allegedly terminated Plaintiff because he was inactive for more than six weeks, when he was waiting to obtain the proper security clearance, however, another driver (Caucasian) was inactive for more than six weeks and was never terminated.

14. When Plaintiff was rehired in February of 2019, he did not have the same route and lost all of his accrued vacation time, due to his termination.

15. Since the beginning of Plaintiff's employment, Plaintiff was either not paid timely and/or not paid for all hours worked. Plaintiff did not receive his first paycheck until six (6) weeks after he began his employment with Defendants.

16. In performing his duties, Plaintiff is engaged in transporting and handling goods or materials that were moved or produced for commerce by Defendants.

17. Plaintiff was required to stay on-site or near the pick-up location, after dropping off a load, to wait until the next load was ready for pick-up. The time between loads was approximately 9 (nine) hours ("Waiting Period").

18. Plaintiff was engaged to wait for his next pick-up load and was required to care for Defendants' property, the delivery truck, during the Waiting Period.

19. During the Waiting Period, Plaintiff was required to sleep inside his truck until his next load was ready for pick-up.

20. Despite Plaintiff's repeated requests for a hotel room, Defendants denied Plaintiff's request. However, another driver (Caucasian) was allowed to use a hotel room during his Waiting Period.

21. Plaintiff was also instructed that he could not leave the post office station and had to remain with the truck at all times during his Waiting Period. However, other drivers (Caucasian) were allowed to drive home or to other destinations during their Waiting Period.

22. Management also had a history of ignoring Plaintiff's questions regarding work-related issues, including but not limited to, route assistance and truck equipment.

23. Management would deny Plaintiff's requests for vacation time and other (Caucasian) drivers were given preference for days off, although Plaintiff submitted his requests prior to his Caucasian coworkers.

24. Despite Plaintiff's numerous requests for an alternative route with better hours, when another route became available Defendants assigned the route to another driver (Caucasian) that was hired after Plaintiff.

25. When another driver (Caucasian) was trained to conduct Plaintiff's route, he complained about the numerous stops and was transferred to another route, however, despite Plaintiff's years of employment with Defendants and continuous requests to Management, he has never been given the opportunity to transfer to a different route with better hours.

26. Another driver (Caucasian), that shares the same delivery truck as Plaintiff, receives preferential treatment than Plaintiff. The other driver is not required to refuel the delivery truck and instead Plaintiff is required to refuel the truck. If the delivery truck is in the repair shop, when the repairs are completed Plaintiff is required to pick up the delivery truck, on his own personal time, even though the other driver was responsible for picking up the delivery truck because the repairs were completed before his shift. Plaintiff is also constantly blamed for issues with the truck that the other driver caused.

27. After Plaintiff was continuously discriminated against, in August of 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") citing race discrimination.

28. In October of 2019, when Plaintiff injured his leg on a loading dock he was instructed by Management that he was not allowed to file a worker's compensation claim because he did not report the incident on the same day.

29. In March of 2020, Defendants reduced Plaintiff's hours which caused Plaintiff to become a part-time employee. Plaintiff's hours were instead given to another driver (Caucasian). The

same driver was given an additional route in addition to Plaintiff's hours. Management made no efforts to offer Plaintiff alternative routes to increase his hours despite his repeated requests.

30. Due to Plaintiff's part-time employment status, eventually he lost his benefits coverage.

31. Management refused to allow Plaintiff to take time off to obtain medically necessary surgery. Due to Management's refusal to allow Plaintiff to take time off, his medical surgery was pushed until December of 2020. However, at this point because of his part-time status, Plaintiff did not have insurance coverage at the time of his surgery.

32. Throughout Plaintiff's employment with Defendants, Defendants have constantly harassed and singled out Plaintiff on the basis of his race and in retaliation for his complaints of discrimination.

33. On February 24, 2021, Defendants issued Plaintiff a write-up for allegedly not following instructions and for an unauthorized deviation of his scheduled route. However, Plaintiff has followed the same route for the past three years.

## V. FIRST CAUSE OF ACTION: SECTION 1981 RACE DISCRIMINATION

34. The Civil Rights Act of 1866 prohibits discrimination against any individual because of that individual's race. *See* 42 U.S.C. § 1981.

35. Pursuant to 42 U.S.C. § 1981 Plaintiff pleads a cause of action against Defendants for racial discrimination.

36. The allegations contained in all paragraphs of this Original Complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

37. Defendants have constantly harassed and singled out Plaintiff on the basis of his race.

38. Plaintiff alleges that the Defendants discriminated against him in violation of Section 1981 of the Civil Rights Act of 1866.

## VI.   SECOND CAUSE OF ACTION: SECTION 1981 RETALIATION

39. Plaintiff incorporates the foregoing paragraphs by reference herein.

40. The Civil Rights Act of 1966 prohibits retaliation against an individual who engages in protected activity. *See* 42 U.S.C. §1981.

41. Pursuant to 42 U.S.C. §1981 Plaintiff pleads a cause of action against Defendants for retaliation.

42. Plaintiff engaged in protected activity when he complained about racial discrimination by filing a Charge of Discrimination with the Equal Employment Opportunity Commission.

43. Plaintiff's protected activity resulted in Defendants retaliating against Plaintiff because of his complaint of racial discrimination.

## VII.   THIRD CAUSE OF ACTION: TITLE VII RACE DISCRIMINATION

44. Plaintiff incorporates the foregoing paragraphs by reference herein.

45. Plaintiff faced adverse actions as a result of discrimination based on race (African American) in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. 2000e, *et. seq*.

## VIII.   DAMAGES

46. Plaintiff sustained damages as a result of the actions and/or omission of Defendants described herein.  Accordingly, Plaintiff is entitled to an award of actual, compensatory damages and/or liquidated damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court.  Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future.

## IX. PUNITIVE DAMAGES

47. Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to his protected rights. In order to punish said Defendants for engaging in unlawful discrimination and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery of punitive damages.

## X. JURY DEMAND

48. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff has submitted the jury demand and herein submit the jury fee.

## XI. PRAYER FOR RELIEF

49. For the reasons set forth above, Plaintiff, Eric Garner, respectfully asks that the Court issue citation for Defendants to appear and answer, and that he be awarded a judgment against Defendants for the following:

   a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to back pay, reinstatement of hours, upgrading, and compensation for benefits not received;

   b. Lost wages in the future;

   c. Past physical pain and mental suffering;

   d. Present physical pain and mental suffering;

   e. Future physical pain and mental suffering;

   f. Punitive damages in an amount above the minimum jurisdictional limits of the Court;

   g. Reasonable attorneys' fees as allowed by law, with conditional awards in the event of appeal;

  h. Prejudgment interest at the highest rate permitted by law;

  i. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

  j. Costs of Court; and

  k. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

      Respectfully Submitted,
      TB Robinson Law Group, PLLC

      */s/ T.B.R.*

      Terrence B. Robinson
      Fed. Bar No. 14218
      Texas Bar No. 17112900
      Email: TRobinson@TBRobinsonlaw.com
      7500 San Felipe St., Suite 800
      Houston, Texas 77063
      Phone: (713) 568-1723
      Facsimile: (713) 965-4288
      **ATTORNEY FOR PLAINTIFF**